# Staunton.

## TROUT'S ADM'R AND ALS. V. WARWICK, TRUSTEE, AND AL.

### September 27th, 1883.

VENDOR AND VENDEE—*Deed as escrow—Equitable title—Registry—Case at bar.*—Circuit court of N. directs W., trustee for his wife, to buy, subject to its approval at price not exceeding $6,000, payable out of her funds in its hands, a home for her. In 1873, trustee contracts by writing with H. for 240 acres in A. at $12,000, subject to court's approval. In March, 1874, trustee reports contract with H.; but court is told that only 100 acres thereof at $6,000—cash, $2,500, balance in three annual payments—is to be paid for out of her funds. H.'s conveyance of the 100 acres to trustee is filed as escrow until cash payment made. Court confirms report *quoad* the 100 acres, and "the deed as escrow, until cash payment made and recorded," and provides for paying not only the cash but the other payments. On 6th November, 1874, all the purchase money, except $419.59, is paid, and during that year that balance is paid. Deed is recorded April 13, 1876. Written contract never was. T.'s administrator and others got judgments against H. 15th March, 1876, which were docketed two days later. In suit to subject the 100 acres to those judgments;

HELD:

1. This is not a case coming within the operation of the statute requiring the registry of titles. The purchase being directed by the court of N., and conditional upon its approval, was not the purchase of the trustee, but of the court itself, and there was no purchase until that approval was given.

2. If it did come within the operation of that statute, there was no contract in writing between W. and H. for the purchase of the 100 acres, which could have been placed on record, the failure to register which rendered said land liable to said judgments.

3. The deed delivered as *an escrow* in the proceedings of a court of equity, administering trust funds, is not within the intendment of that statute. *Briscoe* v. *Ashby and als.*, 24 Gratt. 469, approved.

4. That deed, so delivered as *an escrow*, could not have been placed on record until W. had become entitled to it by paying the cash payment on 6th November, 1874, when all the purchase money, except $419.59, was paid.

5. But as that balance was paid, and trustee held possession of the 100 acres under a parol contract and equitable title, before T.'s administrator and others got their judgments against H., that land is wholly exempt from the lien thereof. *Floyd* v. *Harding*, 28 Gratt. 401, approved.

Appeal from decree of circuit court of Augusta county, entered 26th November, 1871, in a cause wherein Hugh M. McIlhany, administrator of Nicholas K. Trout, deceased, the Merchants Bank of Baltimore, Loeb Brothers and others, were plaintiffs, and Jacob Warwick, trustee of his wife, Ellen Warwick, and her children, M. G. Harman's administrator and heirs and others were defendants.

The object of the suit was to subject to sale to pay the plaintiffs' judgments, which were rendered and docketed about 15th March, 1876, in said county, a tract of land containing one hundred acres, situated in said county, four miles north of Staunton, on the Valley railroad, and same held by said Jacob Warwick, as such trustee under an equitable title, he having under the directions of the circuit court of Nelson county purchased same by parol agreement, and paid therefor out of trust funds held by the latter court, and belonging to the said Ellen Warwick and her children, during the year 1874. A deed from said Harman and wife, and others, conveying said land to said trustee, had been filed in the proceedings of two causes pending in the said circuit court, as *an escrow*, and so to remain until the cash payment should have been made; which payment as well as all of the purchase money, except $419.59, was paid on 6th November, 1874, and the said balance was paid during that year. The circuit court of Augusta county held that "inasmuch as after the cash payment of $2,500 was completed, on 6th November, 1874, the deed for said land was no longer an escrow, and no excuse existed for further delay to record the

same, and it was not withdrawn and recorded until after the rendition.and docketing of the said judgments, so much of the purchase money as remained unpaid after that day, or an interest in the land equivalent thereto, was liable to those judgments." From this decree Trout's administrator and others obtained from one of the judges of this court, an appeal. The opinion more fully states the facts.

*G. M. Cochran,* and *Thos. C. Elder,* for the appellants.

*Alexander Fultz,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

At the term of the circuit court of Augusta county, which commenced March 15th, 1876, the personal representative of N. K. Trout, deceased, recovered a judgment against M. G. Harman and others which, principal, interest and costs, amounted, on the 15th of March, 1879, to $518.05; and, at the same term of said court, another judgment against the said M. G. Harman and another, which on the 15th of March, 1879, amounted to $1,815.92; and at the same term of the said court Loeb Brothers recovered against the said M. G. Harman and another, a judgment which amounted, on the 15th March, 1879, to $1,096.22. All these judgments were regularly docketed in the clerk's office of the county court of Augusta county on the 17th April, 1876.

At the September term, 1873, of the circuit court of Nelson county, in two causes therein pending under the styles of *Massie, &c.,* v. *Warwick et als.,* and *Warwick, &c.,* v. *Massie et als.,* in which there were certain funds under the control of the court belonging to Jacob Warwick, as trustee for his wife, Ellen Warwick, and her children, a decree was entered, appointing the said Jacob Warwick, trustee, a commissioner of said circuit court, with authority to make a conditional contract for the purchase of a tract of land in Virginia, subject to the ap-

proval of the court, at a price not to exceed $6,000, as a home for his family, to be paid for out of the funds in said causes coming to him as trustree aforesaid. On the 13th December, 1873, the said Jacob Warwick, trustee for Mrs. Ellen Warwick, entered into a written contract with M. G. Harman for the purchase of two hundred and forty acres of land with valuable improvements thereon, belonging to said Harman, situate in the county of Augusta, three or four miles north of the city of Staunton, at the price of fifty dollars per acre, seven thousand dollars to be paid when a good title was made, and the balance in three equal instalments at one, two and three years from January 1st, 1874, with interest from that date, to be secured by retention of the vendor's lien; possession to be given on the first day of February, 1874. And it is further provided, that "as said Warwick is acting as trustee, appointed by the circuit court of Nelson county, this contract is made subject to the approval and ratification of said court." The said written agreement was signed and sealed by M. G. Harman and Jacob Warwick, trustee.

At the March term, 1874, of the circuit court of Nelson county, said Jacob Warwick, trustee, made and filed his report in the aforementioned causes, setting forth his action under the decree authorizing him to purchase a farm for his family. The report was accompanied by the agreement between him and M. G. Harman, of the 13th of December, 1873, and by a deed from M. G. Harman and wife and Lewis Harman and wife to Jacob Warwick, of date January 1, 1874, conveying one hundred acres of land, with improvements thereon, in trust, for the use and benefit of the wife and children of said Warwick. The boundaries of the one hundred acres of land, and the price, $6,000, are set out in the deed; but the cash payment, as agreed, had not been made, nor any part of it, and the deed was filed as an *escrow*.

The circuit court of Nelson county, at its March term, 1874, entered a decree confirming the said report of Jacob Warwick, trustee, as to so much of the contract with M. G. Harman as

relates to the one hundred acres of land which is described and conveyed in the deed; and the decree proceeds as follows: "It being conceded, however, in the report aforesaid, that the cash payment called for by the contract—viz: the sum of $2,500— has not been made, although the same is receipted and acknowledged in the deed, said deed is not to be considered as having been delivered, but is to be filed among the papers and held as an escrow until the cash payment (so-called) aforesaid shall have been made and recorded." On the 6th day of November, 1874, a transfer of bonds was made to M. G. Harman, and accepted by him as cash, which completed the cash payment, and discharged all the deferred purchase money but $419.59; and this balance was wholly paid to M. G. Harman, January. 19th, 1875.

The contract of December 13th, 1873, was never recorded; but the deed of January 1st, 1874, was obtained by Jacob Warwick from the clerk's office of the circuit court of Nelson county, after the March term, 1876, of the circuit court of Augusta county, and was admitted to record in the clerk's office of the county court of Augusta county on the 13th of April, 1876. Jacob Warwick, trustee, and commissioner of the circuit court of Nelson county, in his report of March 17th, 1874, to the said court, says: "The undersigned has removed with his family to Augusta, and taken possession of the lands bought of Harman."

These are the material facts disclosed by the record, and upon this state of facts the question is, whether the aforesaid judgments against M. G. Harman and in favor of the appellants, obtained at the March term, 1876, of the circuit court of Augusta county, and regularly docketed in the clerk's office of the county court of Augusta, within the time prescribed by law, are binding on the one hundred acres of land sold and conveyed by the said M. G. Harman and wife and others to the appellees, by a deed which was not recorded until after the said judgments were rendered. Appellants filed their bill in the circuit court of Augusta county in which they charged that their judgments aforesaid against M. G. Harman were liens upon this one hundred acres

of land in the hands of his vendee, Jacob Warwick, trustee and commissioner aforesaid; and praying to subject the said land to the satisfaction of their said judgments.    And the said court, at its November term, 1881, entered a decree by which it adjudged that "Jacob Warwick, trustee, &c., held the one hundred acre tract of land under an equitable title from the time he took possession of said tract of land up to the hand-payment provided for in the deed of M. G. Harman and others to said Warwick, trustee, was made; that said deed executed by M. G. Harman and others on the 1st day of January, 1874, being held as an escrow, could not be placed upon record, and there was no other contract in writing which said Warwick, trustee, could have placed upon record.    But the court was further of opinion, that, at the time said hand-payment was made in full, the said trustee could have withdrawn the deed theretofore held as an escrow, and placed the same upon record, and that in consequence of his failure to do so, the judgment lien creditors of M. G. Harman are entitled to subject said one hundred acre tract of land to the payment of whatever balance of the purchase money of said tract of land remained unpaid ·by said trustee at the time said hand-payment was fully made; and it appearing that at the time said hand-payment was paid up in full, viz: on the 6th day of November, 1874, there was paid, in addition thereto, a sum sufficient to reduce the purchase money of said tract of land still remaining unpaid by said trustee, to the sum of $419.59, it is adjudged, ordered and decreed that Jacob Warwick, trustee, &c., out of the trust estate, do pay to I. Fred. Effinger, the general receiver of this court, the aforesaid sum of $419.59, with interest thereon from the 6th day of November, 1874, till paid; and that unless the said Jacob Warwick, trustee, &c., or some one for him, do pay within four months from the rising of the court, the said sum of money with interest, &c., then that the said one hundred-acre tract of land should be sold by commissioner appointed for the purpose, &c. And upon the payment of said sum of money by said trustee, or

by some one for him, said tract of one hundred acres of land shall stand acquitted for all claims of the judgment lien creditors of M. G. Harman, or any party claiming under the said Harman."

From this decree an appeal is had to this court, and the questions now to be decided are—first. Is this such a case, upon the facts stated by the record, as comes within the provisions of the act requiring the registry of titles? and, secondly, even if it were a case within the policy and requirement of the registry acts, did the appellees, at the time of the purchase of the one hundred acre tract of land from M. G. Harman, have any contract in writing which they could have placed on record, the failure to record which rendered said tract of land liable to the judgments of said appellants?

Warwick, trustee, was not the purchaser of this one hundred acre tract, the real purchaser was the circuit court of Nelson county, whose commissioner he was, and the money invested in this land was a trust fund belonging to Mrs. Warwick, a married woman, and her children, in the hands of the said circuit court, arising out of proceedings had in the causes then pending in that court of *Massie, &c.* v. *Warwick et als.*, and *Warwick &c.* v. *Massie et als.* aforesaid, the regular proceedings of a court of equity having jurisdiction of the subject matter and of the parties.

In the case of *Briscoe* v. *Ashby et als.*, 24 Gratt., page 469, Judge Christian, speaking for the court, said: "That court (the circuit court of Culpeper) held in its hands funds belonging for the most part to infants and married women. These funds were derived from the sale of trust property, being real estate lying in the county of Fauquier, which funds the court had directed its commissioner to invest in lands lying in Culpeper, and when the whole of the purchase money was paid the said land was to be held by a trustee for the appellees upon certain trusts and conditions. I repeat, the title of the appellees was founded upon these proceedings of a court of chancery. Does the registry

act require that these proceedings shall be made matter of record in any county where the commissioner of the court may purchase land for an investment of this fund?. If so, what part of these proceedings? The decrees only, or the bill, answer, exhibits and depositions? All of which are necessary to show the title of the appellees. The title of the appellees is not within the terms of the registry act, and is not such a title as is required to be recorded by that act." This case of *Briscoe* v. *Ashby et als.* is very similar to the case at bar, and does, we think, settle the rule that an *undelivered* deed filed as *an escrow* in the proceedings of a court of equity, administering a trust fund belonging to a married woman and her infant children, is not within the terms or intendment of the registry act.

And this conclusion being settled, in answer to the first question, we might end this opinion at this point; but it is insisted, by counsel for appellants, that the written contract of December 13th, 1873, was the true contract of purchase of the one hundred acre tract, and ought to have been recorded. This contract was for the purchase by Warwick, trustee, of two hundred and forty acres of land from Harman, at $50 per acre, and was conditional upon the approval and ratification of the circuit court of Nelson county. The circuit court of Nelson county never did ratify it. Subsequently, Warwick and Harman make an agreement for the sale of one hundred acres, at $60 per acre; and, after the proper affidavits required by the court are obtained, a deed, dated 1st January, 1874, and acknowledged February 14, 1874, is executed by Harman and wife and others, setting forth, specifically, this contract for the one hundred acres at $60 per acre, subject to the approval and ratification of the circuit court of Nelson. This deed was not delivered; and Warwick could not demand its delivery; for, by the terms of agreement between him and Harman, it was to be held as an escrow; and the circuit court of Nelson county expressly decreed, that " said deed is not to be considered as having been delivered, but is to be filed among the papers and held as an escrow until the cash

payment (so-called) shall have been made and recorded." Now this cash payment was not completed until November 6th, 1874; yet, Warwick, trustee, and commissioner of the circuit court of Nelson county, reported to the court, March 17th, 1874, that he, "with his family (the wards of the said court), had removed from Nelson to Augusta county, and taken possession of the lands bought of Harman." Now, was he, and were the *cestui que trusts*—the married woman and infant children—in possession of this one hundred acre tract under a legal title? or were they holding and occupying the land under an equitable title? or were they trespassers? Certainly they had no legal title, because they had never received a deed, and none had been *delivered.* They did not hold under the contract of December 13th, 1873, because that was never ratified by the circuit court of Nelson county, and was a totally different contract, for two hundred and forty acres of land at $50 per acre, and had been abrogated and superseded by a subsequent parol contract between Warwick, trustee, and Harman, for one hundred acres at $60 per acre. It is very plain and certain, we think, that they took possession of this one hundred acre tract of land by a parol contract, and held it under an equitable title; and the whole of the purchase money was paid in full before the judgments of appellants were obtained. Warwick had no contract in writing under which he took possession of this land, which he had control of, and which he could have placed upon record—even had the case been within the operation of the registry acts.

This case is governed, we think, by the ruling of this court in *Floyd, trustee* v. *Harding et als.,* 28 Gratt. 401, and *Young et als.* v. *Devries et als.,* 31 Gratt. 304. The case of *Eidson* v. *Huff,* has no analogy to the case at bar. In *Eidson* v. *Huff,* there was no parol contract—no contract conditioned upon the approval of a court—no undelivered deed, and no semblance of an equitable title; the whole transaction was evidenced by a complete deed, duly signed, sealed and delivered; the vendor

retaining no right, and nothing yet to be done by the vendee, who was clothed with a complete legal title.

For the foregoing reasons, we are of opinion that the decree of the circuit court of Augusta, of November term, 1881, appealed from, is right and should be affirmed by this court, in so far as it holds that the appellees held the said one hundred acre tract under a good equitable title, free and exempt from the liens of the judgments of the appellants; but we think that the said decree is erroneous, in so far as it holds the said land bound by said judgments to any extent. It was erroneous to require the said Jacob Warwick, trustee, to pay the sum of $419.59 with interest from November 6th, 1874; and the said decree is, to that extent, annulled and reversed.

The decree is as follows:

The court is of opinion, for reasons stated in writing and filed with the record, that the circuit court did not err in holding that Jacob Warwick, trustee, held the one hundred acre tract of land under an equitable title from the time he took possession of said tract of land up to the time when the payment of the cash, or hand-payment, provided for in the deed from M. G. Harman and others to said Warwick, trustee, was made; and that said deed, executed by said M. G. Harman and wife and others, dated January 1, 1874, was held as an escrow and could not be placed upon record; and that there was no other writing which said Warwick, trustee, could have placed upon record. But the said circuit court did err in deciding that the lien creditors of M. G. Harman were entitled to subject the said land to the payment of four hundred and nineteen dollars and fifty-nine cents; and in directing said Jacob Warwick, trustee, out of the trust estate to pay to the general receiver of the said court the said sum of $419.59, with interest thereon from November 6th, 1874, till paid; and so much of the said decree as directs the said Jacob

Decree.

Warwick, trustee, to pay the said sum of $419.59, with interest thereon, to the said general receiver of the court is reversed and annulled.    But the appellees being the parties  substantially prevailing in  this court, it is  decreed and ordered  that the appellants  pay to the appellees their  costs  by them  expended in the said circuit court, and also their costs expended in  their defence in this court and thirty dollars damages.    And this court, now proceeding to render such decree as the  said circuit court court should have rendered, it is adjudged, ordered  and decreed that the complainant's bill be dismissed

  DECREE REVERSED IN PART, IN FAVOR OF THE APPELLEES.